## SWISS BANK CORPORATION v. MARKHAM, Alien Property Custodian.

District Court, S. D. New York.

Dec. 28, 1945.

928

White & Case, of New York City (Lowell Wadmond, James McCarron, and Robert Nelson Shiverts, all of New York City, of counsel), for plaintiff.

John F. X. McGohey, U. S. Atty., of New York City, and C. E. Rhetts, Acting Head, War Division, Harry LeRoy Jones, Chief, Alien Property Unit, and Irving J. Levy, Chief Trial Atty., all of War Division, Department of Justice, all of Washington, D. C., (William L. Lynch, Asst. U. S. Atty., of New York City, of counsel), for defendant.

LEIBELL, District Judge.

This action was instituted against the Alien Property Custodian under Section 9(a) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 9(a), to recover certain shares of stock, in which plaintiff claims an interest as pledgee. The complaint alleges that the plaintiff is a foreign corporation organized and existing under the laws of Switzerland and that it maintains a New York Agency in the Borough of Manhattan, City of New York "which is its principal place of business within the United States".

The complaint also asserts that the issuance of a Vesting Order by the Alien Property Custodian on April 20, 1942, pursuant to which he purported to vest and seize certain shares of stocks which plaintiff held as collateral for an unpaid loan, was in violation of the property rights of the plaintiff in said securities and in violation of due process of law, and that defendant has taken the said securities and property of plaintiff without just compensation being made therefor. There are allegations showing that the plaintiff on August 21, 1945, duly made and filed with the Alien Property Custodian a notice of its claim to the said securities, and, without making any application for a hearing thereon and without making any application to the President, thereafter instituted this action to recover the securities as permitted by Section 9(a) of the Trading with the Enemy Act.

Section 9(a) provides:

"Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefor by the claimant, may order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall determine said claimant is entitled: Provided, That no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title, or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the Supreme Court of the Dis-

trict of Columbia * or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States or the interest therein to which the court shall determine said claimant is entitled. If suit shall be so instituted, then such money or property shall be retained in the custody of the Alien Property Custodian, or in the Treasury of the United States, as provided in this Act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, transfer, assignment, or delivery by the defendant, or by the Alien Property Custodian, or Treasurer of the United States on order of the court, or until final judgment or decree shall be entered against the claimant or suit otherwise terminated."

Under the Act plaintiff as a Swiss citizen is not an enemy or an ally of an enemy of the United States, or a national of a designated enemy country. Plaintiff's right to sue is not questioned.

The defendant moves to dismiss the complaint on the ground of improper venue and contends that plaintiff should have sued in the District Court for the District of Columbia. The plaintiff, a Swiss joint stock bank, carries on a general banking business, with headquarters in Basle, Switzerland. It maintains thirteen branches and five agencies in Switzerland. All the members of its board of directors are Swiss citizens or residents. In the Fall of 1939 plaintiff opened an Agency in the United States at No. 15 Nassau Street, New York City, and was duly licensed by the Superintendent of Banks of the State of New York to do business at the New York Agency. N.Y.Banking Law § 202, Consol.Laws N.Y. c. 2. One of the conditions for the issuance of a license to a foreign banking corporation to transact business in this State is that the applicant for the license designate the Superintendent as its attorney "upon whom all process in any action or proceeding by any resident of the state against it may be served with the same effect as if it were a domestic corporation and had been lawfully served with process within the state." N. Y.Banking Law, § 200(3). Plaintiff has no other office or agency in the United States. Its license has been re-issued from year to year, § 202. The Agency occupies a large banking-office space at 15 Nassau Street under a five-year lease, renewed in 1944, where it employs 160 persons. It has deposits of between 50 and 100 million dollars and is the custodian of securities of its customers, valued at 100 million. The total of its State and Federal taxes has been in excess of $250,000 per annum. On September 19, 1939, the Swiss Custodian Corp. was organized in New York State to act as custodian for plaintiff's customers and to buy and sell securities for them and has offices at plaintiff's New York Agency.

The plaintiff contends that under the provisions of § 9(a) of the Act the plaintiff has properly brought this suit in the United States District Court for the Southern District of New York, because the plaintiff's principal and only place of business in the United States is at its New York Agency located within the Southern District of New York. It is the contention of the defendant that a corporation organized in a foreign country has only one forum in which to bring suit against the defendant under § 9(a) of the Trading with the Enemy Act, namely, the United States District Court for the District of Columbia, and that this is so regardless of whether the foreign corporation has a place in the United States for the transaction of business.

█ Should the words of the Act "principal place of business" be interpreted as meaning, principal place of business within the United States? A somewhat analogous situation was presented in construing the Jones Act, 46 U.S.C.A. § 688, which authorizes seamen to sue their employers for injuries sustained in the course of their employment. Jurisdiction of actions brought under that Act is conferred as follows:

"Jurisdiction in such action shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

* Now the U. S. District Court for the District of Columbia.

Judge Learned Hand in the case of Stewart v. Pacific Steam Navigation Co., D.C., 3 F.2d 329, 330, held that in the case of a foreign steamship company, the clause "in which its principal ˙ office is located * * * means [the place where] the principal office of the foreign steamship company is located within the United States" and that there alone could the seamen's action be brought if the section was intended to cover foreign steamship corporations.

Unless § 9(a) of the Trading with the Enemy Act is given a similar interpretation in this case, the "principal place of business" of the plaintiff corporation would be its office at Basle, Switzerland, and the plaintiff would be limited to the United States District Court for the District of Columbia as its forum for this action. There seems to be no good reason why so narrow a construction should be given to § 9(a). A Swiss citizen, residing in New York City, could sue in this Court, if he owned the claim asserted by the plaintiff. Why should any different rule apply to a Swiss corporation, with its principal place of business in the United States located in New York City? Conceivably such a foreign corporation might have several places of business within the United States, and for that reason the Act specifies "its principal place of business."

The Trading with the Enemy Act as originally enacted October 6, 1917, 40 Stat. 419—provided that the claimant "may * * * institute a suit in equity in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business * * *." The Act of July 11, 1919, c. 6, § 1, 41 Stat. 35, 50 U.S.C.A.Appendix § 9, amended that provision so as to permit the claimant to "institute a suit in equity in the Supreme Court of the District of Columbia or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business * * *." In the discussion of this amendment in the Senate (58 Cong.Rec. 901) Senator Underwood stated:·

"If the Senator will turn to page 3, line 20, I will state that the only change made there is that this language is inserted:

" 'In the Supreme Court of the District of Columbia, or.'

"That is one amendment. The reason for that amendment is that as the law now stands the claimants of this property are many of them persons whose property was taken through mistake and who are American citizens or allied citizens. In most cases the jurisdiction over the claimants is in the city of New York, in the southern district of New York. It was represented to us that that district was very crowded and very far behind in its dockets. This gives the option to the claimant or litigant to sue in the court in his own district, as provided in the act, or to come here and sue in the Supreme Court of the District of Columbia. If he comes here—and he can not be forced to come here; he comes of his own will—it gives him an earlier and speedier hearing and it is more convenient to the Government officers."

In the House of Representatives, Congressman Good explained the conference report on the Bill as follows:

"The first amendment is an amendment to the trading-with-the enemy act, and while the amendment seems to be a long and rather complicated one, it only involves two things: first, it confers additional jurisdiction upon the Supreme Court of the District of Columbia to try certain classes of cases that arise in the administration of this law. These cases have practically all be [sic, been] tried in the southern district of the State of New York, and the work is so congested in that district that it was found necessary to confer upon some other courts jurisdiction to try them. So in line·19, page 3, there is a provision conferring jurisdiction upon the Supreme Court of the District of Columbia, and in order to write that provision in the law those in charge with administering the law thought it best to rewrite the entire paragraph, and that was done." 58 Cong.Rec. 1233.

To apply the above quoted statements to the case at bar, this Court has jurisdiction and this District is a proper venue in which plaintiff may maintain this action. But the District Court for the District of Columbia would also have had jurisdiction if plaintiff had elected to select the District of Columbia as the scene for instituting the action. The claimant had the option to sue in this district or in the District of Columbia, but "cannot be forced" to go to the District of Columbia to start the

suit. If the claimant goes there to sue, he does so "of his own will." In the case at bar the claimant has chosen this Southern District of New York as the venue for its suit. To dismiss this action, with a direction that plaintiff sue in the District of Columbia, would run counter to the clear intent of the provisions of § 9(a) of the Act, as understood by the Congress when the amendment of the Act was under consideration in July 1919.

In so far as the convenience of the suit is concerned it does not appear that the Alien Property Custodian would be put to any greater inconvenience in defending a suit brought in this District by a foreign corporation than he would if a New York corporation, having a principal place of business in New York City, were the claimant plaintiff. The interpretation contended for by the defendant would limit the phrase "principal place of business" to domestic as distinguished from foreign corporations. But § 9(a) makes no such distinction and uses only the general term "corporation", making no mention whatsoever of "foreign corporations" or "domestic corporations", as such.

Viewing § 9(a) as a whole, it seems to me that a foreign person "not an enemy or ally of enemy" residing outside the United States, or a corporation organized in a foreign country "not an enemy or ally of enemy" and having no place of business in the United States, would be limited to the United States District Court for the District of Columbia, as the venue of the action in a suit against the Alien Property Custodian under § 9(a). But if the foreign person resides in the United States in a district other than the District of Columbia, or if the foreign corporation has its principal place of business in the United States in a district other than the District of Columbia, then any such claimant has a choice of suing either in the United States District Court for the District of Columbia, or in the United States District Court for the district in which the foreign person resides, or in which the foreign corporation has its principal place of business in the United States.

The motion to dismiss the complaint on the ground of improper venue is denied. Settle order.